## THE MT. OLIVE AND STAUNTON COAL COMPANY

*v.*

### HENRY HERBECK.

*Opinion filed April 18, 1901.*

190    39
,190    544

MINES—*provision of act concerning props and timbers considered and applied.* Section 16 of the act on mines, which requires a mine owner or operator to furnish props and timbers so that "workmen" may at all times be able to secure the workings for their own safety, applies to a case where a miner is engaged in taking down a dangerous roof under a special agreement for pay in excess of the price for opening entries fixed by the scale of the miners' union of which he is a member.

*Mt. Olive and Staunton Coal Co.* v. *Herbeck*, 92 Ill. App. 441, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macoupin county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

CHARLES W. THOMAS, for appellant.

LANE & COOPER, for appellee.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

The Appellate Court for the Third District affirmed a judgment in the sum of $1500 entered in the circuit court of Macoupin county in favor of the appellee, against the appellant company, in an action on the case, and the cause comes to this court on a further appeal.

The appellant company was operating a coal mine at Staunton, in said county, and while appellee and an associate workman were engaged in "driving" or "opening" an entry in the mine a large piece of slate became detached from the roof of the entry, fell upon appellee and broke one of his legs and otherwise injured him. The declaration charged the injury resulted from the

willful failure of the appellant company to comply with the provisions of section 16 of the Miners act, (2 Starr & Cur. 1896, p. 2730,) which requires it should keep a supply of timber constantly on hand of sufficient length and dimensions, to be used as props and cap-pieces, and to deliver the same as required, with the miner's empty car, so that the workmen may at all times be able to properly secure said workings for their own safety.

The trial court gave the jury before whom the cause was heard, the following instruction:

"The law makes it the duty of the owner, agent or operator of every coal mine to keep a supply of timber constantly on hand of sufficient lengths and dimensions, to be used as props and cap-pieces, and to deliver the same as required, with the miner's empty car, so that the workmen may at all times be able to properly secure said workings for their own safety; and if such operator fails willfully so to do, and by reason of such failure a person employed about such mine is injured, the owner or operator of such mine is liable to such person so injured for any direct damages sustained thereby."

The contention of the appellant company is, that the evidence disclosed that appellee was a member of the miners' union, and that the union had established the price for mining coal at forty cents per ton and for driving or opening an entry at one dollar per yard; that the entry in question had a "very bad roof," and that much more than the ordinary amount of rock and slate had to be taken out of the roof to secure a solid or safe roof; that appellee was unwilling to take down the extra quantity of rock and slate from the top or roof of the entry for the "union" price of one dollar per yard, and that it was agreed he should receive twenty cents an hour for all such extra work in addition to the "union" rate of one dollar per yard, and that while appellee was so engaged in removing such extra overhanging rock and slate a portion thereof fell upon and injured him.

The argument of counsel is, to quote from his brief, said section 16 of chapter 93, (2 Starr & Cur. 1896, p. 2730,) usually denominated the "Miners act," "has reference to the ordinary and usual work of mining coal. There are many mines in this State in which it is necessary to take down all of a certain stratum lying between the coal and the solid rock. It is of such a nature that exposure to the action of the atmosphere disintegrates it so that it will fall between props, no matter how numerous they are. A proper regard for the lives of the men whose duties require them to-contend with the danger of falling 'clod' and half-formed rock and rotten slate, makes it necessary to take down all such material. It is danger-ous to take it down, but more so to leave it up. There is certainly no rule of public policy that forbids a mine owner to employ anybody to take down such material, and no rule that requires him to furnish props to hold up material which props will not secure and which must come down. The 'workmen' alluded to in the statute are not those hired to take down dangerous roofs, and it was not the intention of the law-makers to forbid or interfere with that necessary act."

If the appellee and his associate had been injured while taking down the rock and slate in the roof of the entry to the ordinary height of such roofs, as was in con-templation when the price to be paid for such work was fixed by the miners' union, the argument of counsel con-cedes they would be "workmen" within the meaning of that word as used in said section 16 of the Miners act, and entitled to the beneficial provisions of the section. The scale of the miners' union fixing one dollar per yard for opening entries was no doubt the minimum price,— at least, according to the argument, appellant and ap-pellee did not regard the work to be done in opening this entry as fully covered by the union scale, but by agree-ment fixed the compensation which, in addition to the price fixed by the scale of the union, should be paid for

the work in this entry. We are unable to conceive that this agreement had or could have any effect to remove appellee from the class denominated "workmen" in the statute, to which class it is conceded he would have belonged had the union scale of prices been applicable to all the work necessary to be done in this entry. The appellee was a "workman" within the meaning of the statute, for the reason he was engaged in performing in the mine that character of labor which exposed him to the perils the statute was designed to protect him against. Neither the action of the union in fixing a scale of prices to be paid per yard for driving the entry, or the agreement between the appellee and the appellant company, had any effect upon the status of the appellee as a workman, within the meaning of the word as used in said section 16. The court did not err in advising the jury the provisions of said section 16 were applicable to the case of appellee.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*